THE PEOPLE OF PUERTO RICO EX REL. LUIS A. CASTRO, Plaintiff and Appellee, *v.* LINO PADRÓN RIVERA, Defendant and Appellant.

No. 8539.   Argued July 14, 1942.—Decided July 29, 1942.

778

*C. Coll y Cuchí* for appellant.  *E. Martínez Rivera* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The essential facts of this case are as follows:

On September 11, 1931, the relator, Luis A. Castro, by virtue of an appointment issued in his favor by the City Manager of the Capital of Puerto Rico, entered upon the duties of the office of Secretary of the Capital; he continued in said office without interruption until April 21, 1941, when the facts complained of by the relator and which are the basis of this proceeding in *quo warranto* occurred.

The relator alleges that on the 21st of April 1941, without his having resigned his office and without having been suspended or removed by the City Manager of the Capital, the defendant Lino Padrón Rivera was sworn in and took charge of the office of Secretary of the Capital substituting the relator and he is now illegally usurping the functions of said office against the express wish of the relator; that the

defendant Lino Padrón Rivera holds, discharges, and exercises the office of Senator in the Legislature of Puerto Rico, to which office he was elected in the elections held on November 5, 1940; and that the defendant has no title or right to the office in question for the following reasons:

(*a*) Because on the date that the defendant attempted to take charge of that office, said office was not vacant, but occupied by the relator.

(*b*) Because the defendant bases his right to hold the office on an appointment issued in his favor by the City Manager Mr. Fernando Géigel, which appointment is null and void, as the office was occupied by the relator since September 11, 1931, by virtue of an appointment made in his favor by the City Manager.

(*c*) Because if the City Manager intended to remove the relator by making an appointment in favor of the defendant said appointment can have no effect, for no charges have been preferred against the relator nor has he been given an opportunity to be heard, as required by §27 of Act No. 99 of May 15, 1931 (Laws of 1931, p. 626).

(*d*) Because the defendant having been elected to, and inducted into, the office of Senator, the functions of which he exercised on the date on which he attempted to take charge of the office of Secretary of the Capital, he is precluded from exercising the functions of said office of Secretary of the Capital by virtue of the express prohibition contained in §30 of the Organic Act of Puerto Rico.

The relator prayed that the title or right under which the defendant claims to hold the office of Secretary of the Capital be investigated, and that judgment be rendered declaring that the defendant has usurped and is illegally exercising the functions of said office in which he should cease immediately; and that he be ordered to pay costs and attorney's fees.

The defendant appeared and filed a demurrer in relation to paragraph (*d*) of the complaint, *supra,* alleging that the facts set forth were insufficient to constitute a cause of action, and in answer to the complaint he alleged:

That on April 22, 1941, the petitioner voluntarily abandoned the office of Secretary of the Capital and delivered possession of the same to the defendant.

That on February 17, 1941, and on several previous occasions, the City Manager of the Capital, Mr. Géigel, and the President of the Board of Commissioners informed the relator that for reasons of a political nature he could not continue in the office of secretary to which the defendant had been appointed; that the relator concurred, agreeing that the office matters would be put in order and immediately turned over to the new secretary as soon as the former was notified of the latter's induction into office, and that on February 17, 1941, the city manager issued the appointment of secretary in favor of the defendant.

That the defendant took the oath of office as secretary on April 21, 1941; and that on the 22d of the same month, the relator delivered to him a complete inventory of the municipal properties in his custody as well as his desk, the minute books, and records of the Government of the Capital, the safe, bonds, insurance policies, bonds in cash, and in general all the properties and supplies pertaining to the office of the secretary.

Lastly, the defendant alleged that the relator is estopped to bring this action or to question the title of the defendant, because the relator deliberately, voluntarily, and definitely abandoned the office and delivered the same to the defendant.

On September 8, 1941, the lower court rendered judgment for the plaintiff, holding that the defendant occupied and exercised the office of Secretary of the Capital illegally; that the relator has a right to said office and has had it since April 22, 1941, and should be reinstated in the same with all

the powers, prerogatives, privileges and emoluments inherent thereto; and finally that the defendant should cease immediately in the exercise of the office and vacate the same; and imposed the costs on the defendant but without including attorney's fees.

The specific holdings of said judgment were as follows:

1. That on February 17, 1941, the date upon which the defendant was appointed, there existed no vacancy in the office of Secretary of the Capital which could be filled by virtue of a new appointment, and therefore that the appointment issued in favor of the defendant was null and void.

2. That defendant's statute as member of the Legislative Assembly (Senator) does not preclude him from being appointed or from exercising the office of Secretary of the Capital.

3. That the appointment of the defendant was based solely on reasons of a political nature, that is, to fulfill political promises; and that even though it is true that the relator turned over his office to the defendant in a peaceful manner, the relator never intended to abandon his office nor to waive his right to the same.

In support of his appeal, the defendant-appellant urges that the lower court erred in declaring that the appointment made in favor of the relator on September 11, 1931, was a lawful title for holding said office after the Board of Commissioners, elected in November 1940, had been inducted into office; in admitting the said appointment as evidence; and in finding that the relator had not voluntarily abandoned the office.

We will now consider and decide the two questions involved in this proceeding.

1st. What was the legal status of the relator, Luis A. Castro, on February 17, 1941, when Mr. Géigel, City Manager of the Capital, appointed the defendant to the office of Secretary of the Capital?

From the evidence presented by the relator himself it appears that the original appointment in favor of Mr. Castro was made by the City Manager Mr. Jesús Benítez, on September 11, 1931; that on January 4, 1937, the relator tendered his resignation of the office to the new City Manager of the Capital, Dr. Carlos M. de Castro, elected in the election of November 1936; that the City Manager Mr. de Castro did not accept the relator's resignation and on said date he gave him a new appointment; that since then, that is, from the date of his original appointment, until the date when the defendant was sworn in, the relator held the office of Secretary of the Capital. Both parties admit that at no time prior to the defendant's induction into office was the relator suspended from his office nor were there any charges preferred against him for his removal from said office.

Was it necessary under the law that the relator should first resign, deliver, abandon, or be removed from the office of Secretary of the Capital, which he had occupied by virtue of appointments issued in his favor by the two predecessors in office of the new City Manager elected in November 1940, in order that the latter could make a new appointment in favor of a person other than the relator? This question must be answered in the negative. To uphold the affirmative we would have to decide that the term of the office of Secretary of the Capital is for life, and this would be in open conflict with our decision in *De Castro* v. *Board of Commissioners,* 59 P.R.R. 673, which we consider as fully applicable to the case at bar. Having decided as we did in said case that " . . . the official term of the City Manager of the Capital is four years, provided during that period he observes good conduct," we must hold in the instant case, that the official term of the Secretary of the Capital is also four years, in accordance with §39 of Act No. 99 of May 15, 1931, which regulates the Government of the Capital. We, therefore, hold that the City Manager of the Capital elected in

November 1940 had, from the moment he was inducted into office, the right to appoint the new Secretary of the Capital without being bound to request the resignation of, or prefer charges against, the relator who by reason of the expiration of the term for which the previous City Manager had appointed him was in possession of the office at the will of the appointing power and until the latter should designate his successor. If a request for the resignation or a removal were a prerequisite, essential for the appointment of the successor of an officer occupying a position in these circumstances, "holding over," we would have to admit that the office could become a tenure for life at the will of the incumbent, merely by the latter's refusal to resign. The right to appoint the new officer can not depend on the preferment of charges and removal of the outgoing officer, because if there were no charges to prefer the position would be converted into a life tenure and the incumbent could continue to hold the office during good behaviour. ▮ We also wish to state, that, even if we were to hold that the resignation of the relator was an essential requisite for the validity of the appointment of his successor, that requisite was fully complied with, since the evidence adduced, from which no conflict appears, established that prior to April 12, 1941, the relator knew that the defendant had been appointed to succeed him in the office of secretary; that on the 15th of said month the relator wrote to the City Manager, Mr. Géigel, asking him for a copy of the appointment issued to the defendant "for the record"; that on the 18th the City Manager sent the relator a copy of said appointment; that in the 21st of the same month the defendant took charge of the office without any opposition or protest on the part of the relator, who excused himself for not attending the act of induction into office because that day was his name day; that on the following day, April 22, the relator went to the office of the secretary and introduced the defendant to the personnel of the office, explaining to him

the duties of each employee; and that he delivered to him an inventory of the contents of the safe, signed the contracts which were pending signature, and took all the necessary steps to acquaint the defendant with the work of the office of the secretary, and at no time did he utter a single word of protest or which might reveal his intention to claim and retain the office which he was voluntarily relinquishing. All these acts performed by the relator voluntarily and without any undue influence, force, or coercion being exercised upon him, constitute a voluntary surrender of the office to his successor. *Attorney General ex rel. Moreland* v. *Maybury,* 141 Mich. 31, 104 N. W. 324; *Rainwater* v. *State,* 121 A.L.R. 981; *Rex* v. *Greene,* 2 Q.B. 460, 6 Jurist (1842) 777; 22 R.C.L. 560, sec. 264. The legal effect of these acts can not be destroyed by a meer *a posteriori* statement made by the relator to the effect that when he acted in the manner shown by the evidence he did not intend to surrender or resign from the office, and that in turning it over he did so with the mental reservation or purpose of subsequently claiming the office through this *quo warranto* proceeding.

The conclusions reached by the lower court are clearly erroneous and insufficient in themselves to support the judgment appealed from. However, as an appeal is taken from the judgment and not from the grounds thereof, it is our duty to uphold it if, in our opinion, there are other grounds to justify its affirmance.

2d. Could the defendant, despite his status as member of the Insular Senate, be legally appointed to the office of Secretary of the Capital?

The English text of §30 of the Organic Act of Puerto Rico in its pertinent part says:

"No senator or representative so elected or appointed shall, during his term of office, be appointed to any civil office *under the Government of Puerto Rico,* and no such senator or representative shall be eligible for appointment to any office created during his term of

office until the expiration of two years after the date upon which his term of office shall have expired." (Italics ours.)

The Spanish version thereof reads as follows:

"Ningún Senador o Representante así elegido o nombrado podrá ser nombrado para ningún cargo civil *en el Gobierno de Puerto Rico* durante el término de su ministerio, ni será elegible para nombramiento para ningún cargo creado durante dicho término hasta después de transcurridos dos años desde la fecha en que haya vencido el mismo." (Italics ours.) Laws of 1938.

A comparison between the English text, which is the one that must prevail, and the Spanish text will show that the phrase "under the Government of Puerto Rico" has been erroneously translated as *"en el Gobierno de Puerto Rico"* instead of *"bajo el Gobierno de Puerto Rico."* Considering that the error of translation is a substantial one, we shall study and decide the question in the light of the English text.

Section 30, *supra,* contains two prohibitions:

(*a*) No senator or representative *shall be appointed,* that is, he can not be legally appointed, to a *civil office* under the Government of Puerto Rico during his term of office.

(*b*) Nor can he be appointed to any office created by the Legislature during the term for which he was elected until two years shall have elapsed since the expiration of said term.

The first of these prohibitions is the one with which we have to deal in this case. Said prohibition is directed to the officer who, according to law, has the power of appointment. When it is said that "no senator or representative shall be appointed" what is really meant is that the members of the Legislature are not eligible for appointment to any civil office under the Government of the Island, and that the officers having the appointing power have no authority to appoint a member of the Legislature to one of such of-

fices. And this can not be otherwise, for a member of the Legislature can not appoint himself.

That the office of Secretary of the Capital of Puerto Rico is a civil office is a question beyond dispute. What we have to consider and decide is whether said office is a "civil office under the Government of Puerto Rico"—"*un cargo civil bajo el Gobierno de Puerto Rico*"—and therefore one of those to which a senator or representative may not be legally appointed during his term as legislator.

The government, that is, the instrumentality created by the Organic Act to regulate and administer the public interests of the Puerto Rican community, is and must be a harmonious whole, and all its subdivisions and dependencies must be guided by the same principles of a genuinely moral administration. For the sake of a more efficient functioning, the law has divided the Government of our Island into two branches: the so-called "Government of Puerto Rico" or "Insular Government," which has authority and jurisdiction over whatever may affect the people of the Island generally, and the "Municipal Government," whose authority and jurisdiction may not reach beyond the territorial limits of a particular municipal subdivision. Even though the insular branch and the municipal branch appear to function as distinct and separate entities, both are in reality parts of a single governmental instrumentality—The Government of Puerto Rico. *San Millán* v. *Pension Board,* 45 P.R.R. 236. This is recognized by the Organic Act itself when it provides (§3) that ". . . all bonds issued by the government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the government of Puerto Rico or of any political or municipal subdivision thereof, . . ."

The municipal subdivisions or municipalities of Puerto Rico are creatures of the Legislature of Puerto Rico, which is one of the three branches of the Government of Puerto

Rico. It is the Insular Legislature which can give life to new municipalities and which has the power to consolidate two or more of those already in existence into a single one. The laws governing the municipalities are enacted by the insular legislators and it is the latter who create the municipal offices and who fix or increase the salaries of the officers. The taxes on the real property situated within the limits of the respective municipalities are collected by officers of the Insular Government and deposited in the respective municipal treasuries. Municipal bond issues require for their validity and effectiveness the previous approval of the Insular Government. All this clearly shows that the municipal governments, due to the relations existing between them and the Insular Government, and due to the supervision that the latter exercises over the former, are integral parts of the Government of Puerto Rico, and therefore the civil offices in the municipalities are civil offices under the Government of Puerto Rico. See *State* v. *Vallé,* 41 Mo. 31.

The organic act of the Government of the Capital, Act No. 99, approved May 15, 1931, is the law that has created the office of Secretary of the Capital, which is now occupied by the defendant by virtue of an appointment made in his favor by the City Manager of the Capital on April 20, 1941. Said act fixes the salary to be paid to the secretary for his services as such. The Legislature may abolish said office and may also diminish or increase the salary of the incumbent. All of which is a further demonstration that the civil office of Secretary of the Capital is a civil office under the Government of Puerto Rico and hence comprised in the express prohibition of the Organic Act. *Wood* v. *Miller,* 242 S. W. 573.

The case of *San Millán* v. *Pension Board, supra,* does not have the scope attributed to it by the lower court. What we decided in that case was that a municipal secretary is not an employee *of the* Insular Government within the purview

of §20 of the Pension Act (No. 104) of 1925 (Laws of 1925, p. 948).

Defendant's contention that the acceptance of the office of Secretary of the Capital created a vacancy in his office of Senator is untenable. The former office being, as we have held, a civil office under the Government of Puerto Rico, the appointment issued by the City Manager of the Capital in favor of the defendant was void *ab initio* and can not be validated by the mere acceptance by the defendant. Moreover, the record shows that the defendant held the office of Senator on the date on which he was appointed to the office of Secretary of the Capital; that after having been inducted into the municipal office not only did he not resign from the office of Senator but he continued to hold the same on the date of the hearing of this case, May 26, 1941; and that upon being asked whether in accepting the office of secretary he had the intention of resigning that of Senator he answered: "I did not have such intention," adding that he did not intend to resign as a Senator. All of that evidence, together with the judicial notice which this court takes of the fact that the defendant has continued and still continues to hold his office of Senator, shows beyond all doubt the firm and deliberate intention of the defendant to continue holding both offices, in violation of the provisions of the Organic Act.

The same reasons of an ethical character which may be adduced to maintain that a senator or representative can not or should not hold a civil office *in the Government of Puerto Rico* might be invoked to sustain that he should not hold a civil office *under the Government of Puerto Rico* either.

Appellant's contention advanced orally at the hearing of this appeal, to the effect that, as Luis A. Castro had relinquished the office, he had no interest entitling him to maintain this *quo warranto* proceeding, is without merit. The relator does not ask to be put in possession of the of-

fice. In authorizing the proceeding, the Attorney General of Puerto Rico did so due to the public interest involved. *Santiago* v. *Feuille, Attorney General,* 10 P.R.R. 408; *People* v. *Oliveras,* 33 P.R.R. 707; *People ex rel. Pérez* v. *Manescau,* 33 P.R.R. 703.

For the reasons stated, the complaint is sustained and the judgment appealed from is modified by declaring and holding that the defendant, Lino Padrón Rivera, unlawfully holds and exercises the office of Secretary of the Capital since the date on which he took charge of the same, that is, since April 22, 1941, and that said defendant must forthwith vacate and cease in the said office, with the warning that if he refuses to do so, the proper writ shall issue in order that the judgment be executed by the marshal, and imposing costs on the defendant, but without including attorney's fees. And as so modified, the judgment is affirmed.